UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                :

DUNKIN' DONUTS FRANCHISED              :
  RESTAURANTS LLC,                             :
  a Delaware Limited Liability Company,     :
DUNKIN' DONUTS FRANCHISING LLC,      :
  a Delaware Limited Liability Company,     :
DD IP HOLDER LLC,                             :
  a Delaware Limited Liability Company,     :
BASKIN-ROBBINS FRANCHISING LLC,      :
  a Delaware Limited Liability Company,     :
BR IP HOLDER LLC,                            :
  a Delaware Limited Liability Company,     :
DB REAL ESTATE ASSETS II LLC,         :
  a Delaware Limited Liability Company,     :
                                                 :
                  Plaintiffs,                :
                                                 :
          v.                                    :     C.A. No. 07-CV-7218 (RJH)
                                                 :
CHELSEA DB ASSOCIATES, INC.,         :
  a New York Corporation,                 :
AKCL INT'L GROUP, LTD.,                :
  a New York Corporation,                 :
KMT ASSOCIATE INC.,                    :
  a New York Corporation,                 :
NEW AMD ENTERPRISES INC.,           :
  a New York Corporation,                 :
CROSS BAY ENTERPRISES, INC.,         :
  a New York Corporation,                 :
TONY LI,                                      :
  a Resident of the State of New York,      :
MAY CHEN,                                :
  a Resident of the State of New York,      :
                                                 :
                  Defendants.              :
-----------------------------------------------------------------x

**COMPLAINT**

**Parties**

1.     Plaintiff Dunkin' Donuts Franchised Restaurants LLC, successor-in-interest to Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021.  It is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States.  Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts System, which involves the production, merchandising, and sale of doughnuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and identification.

2.     Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  It is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States.  Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of doughnuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

3.     Plaintiff DD IP Holder LLC, Dunkin's wholly owned subsidiary and successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  DD IP Holder LLC is

the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin'" or "Dunkin' Donuts."

4.      Plaintiff Baskin-Robbins Franchising LLC ("Baskin-Robbins") is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. Baskin-Robbins is authorized to use the trademarks, service marks and trade names owned by BR IP Holder LLC and to sublicense Baskin-Robbins franchisees, as independent businesspersons, to use these marks and trade names. Baskin-Robbins franchisees are licensed to use the Baskin-Robbins trade names, service marks, and trademarks and to operate under the Baskin-Robbins system, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and identification.

5.      Plaintiff BR IP Holder LLC, successor-in-interest to Baskin-Robbins Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins," and related marks. Baskin-Robbins has the exclusive license to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores. Unless otherwise specified, Baskin-Robbins Franchised Shops LLC and BR IP Holder LLC are collectively referred hereinafter as "Baskin-Robbins."

6.      Plaintiff DB Real Estate Assets II LLC ("DB II"), successor-in-interest to Dunkin' Donuts Realty Investments, Inc., is a Delaware limited liability company with its

principal place of business in 130 Royall Street, Canton, Massachusetts. DB II is a wholly-owned subsidiary of Dunkin' Donuts and is engaged in the business of leasing properties to Dunkin' Donuts franchisees to enable Dunkin' Donuts to franchise independent businesspersons to operate Dunkin' Donuts shops at those locations.

7.     Defendant Chelsea DB Associates, Inc. is a New York corporation with its principal place of business at 215 West 14th Street, New York, New York 10011. At all times relevant to this action, Chelsea DB Associates, Inc. was the owner and operator of a retail doughnut shop and ice cream store located at 215 West 14th Street, New York, New York 10011 ("14th Street Shop"). Defendant is a Dunkin' Donuts and Baskin-Robbins franchisee for the 14th Street Shop pursuant to a Franchise Agreement dated May 29, 2007 (the "14th Street Agreement"). Defendant is licensed to use the Dunkin' Donuts trademarks, trade name and trade dress as well as the Baskin-Robbins trademarks and trade name.

8.     Defendant AKCL Int'l Group, Ltd. is a New York corporation with its principal place of business at 215 First Avenue, New York, New York 10003. At all times relevant to this action, AKCL Int'l Group, Ltd. was the owner and operator of a retail doughnut shop located at 215 First Avenue, New York, New York 10003 ("215 First Avenue Shop"). Defendant is a Dunkin' Donuts franchisee for the 215 First Avenue Shop pursuant to a Franchise Agreement dated March 10, 2004 (the "215 First Avenue Agreement"). Defendant is licensed to use the Dunkin' Donuts trademarks, trade name and trade dress.

9.     Defendant KMT Associate, Inc. is a New York corporation with its principal place of business at 1093/1095 Second Avenue, New York, New York 10022. At all times relevant to this action, KMT Associate, Inc. was the owner and operator of a retail doughnut shop located at 1093/1095 Second Avenue, New York, New York 10022 ("Second Avenue

Shop"). Defendant is a Dunkin' Donuts franchisee for the Second Avenue Shop pursuant to a Franchise Agreement dated April 22, 2005 (the "Second Avenue Agreement"). Defendant is licensed to use the Dunkin' Donuts trademarks, trade name and trade dress.

10. Defendant New AMD Enterprises, Inc. is a New York corporation with its principal place of business at 266 First Avenue, New York, New York 10009. At all times relevant to this action, New AMD Enterprises, Inc. was the owner and operator of a retail doughnut shop located at 266 First Avenue, New York, New York 10009 ("266 First Avenue Shop"). Defendant is a Dunkin' Donuts franchisee for the 266 First Avenue Shop pursuant to a Franchise Agreement dated April 22, 2005 (the "266 First Avenue Agreement"). Defendant is licensed to use the Dunkin' Donuts trademarks, trade name and trade dress.

11. Defendant Cross Bay Enterprises, Inc. is a New York corporation with its principal place of business at 243 Ninth Avenue, New York, New York 10011. At all times relevant to this action, Cross Bay Enterprises, Inc. was the owner and operator of a retail doughnut shop located at 243 Ninth Avenue, New York, New York 10011 ("Ninth Avenue Shop"). Defendant is a Dunkin' Donuts franchisee for the Ninth Avenue Shop pursuant to a Franchise Agreement dated March 28, 2007 (the "Ninth Avenue Agreement"). Defendant is licensed to use the Dunkin' Donuts trademarks, trade name and trade dress.

12. Defendant Tony Li is a natural person and a citizen and resident of the State of New York. Defendant Tony Li is also an officer and shareholder of each of the corporate entities identified in paragraphs 7 through 11 above, and personally guaranteed the obligations of the foregoing entities under the Franchise Agreements pursuant to executed personal guarantees.

13. Defendant May Chen is a natural person and a citizen and resident of the State of New York. Defendant May Chen is an officer and shareholder of each of the corporate entities

identified in paragraphs 7 through 11 above, and personally guaranteed the obligations of the foregoing entities under the Franchise Agreements pursuant to executed personal guarantees.

## Jurisdiction and Venue

14.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a).  The amount in controversy exceeds $75,000, exclusive of costs and interest.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  Defendants reside in and/or conduct business in this District.  A substantial part of the events giving rise to this action occurred in this District, and the majority of the subject property is located herein.

16.     This Court has *in personam* jurisdiction over Defendants because they are residents and/or citizens of this District, they conduct business in this District, and/or a substantial part of the events giving rise to these claims occurred in this District.

## Background Facts – Dunkin' Donuts

17.     Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

18.     DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks.  Dunkin' Donuts has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

19.     DD IP Holder LLC owns numerous federal registrations for the mark Dunkin' Donuts, and related marks.  Among those registrations are Registration Nos. 748,901; 1,148,165; and 1,159,354.  Each of these registrations is in full force and effect, and is incontestable, pursuant to 15 U.S.C. § 1065.

20. The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

21. The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

22. The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years. Dunkin' Donuts and its franchisees have expended approximately $1,500,000,000 in advertising and promoting the Dunkin' Donuts marks over the last thirty-six years. Dunkin' Donuts spent approximately $167,000,000 in fiscal year 2005 alone on advertising and promotion.

23. Dunkin' Donuts and its franchisees currently operate approximately 5,600 shops in the United States and 2,000 shops outside of the United States. Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than forty-five years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

24. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

**Background Facts – Baskin-Robbins**

25. Baskin-Robbins is the franchisor of the Baskin-Robbins System.

26. BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins Incorporated has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

27. BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Among those registrations are Registration Nos. 1,185,045; 1,371,672; and 1,783,116. Each of these registrations is in full force and effect, and is incontestable, pursuant to 15 U.S.C. § 1065.

28. The Baskin-Robbins trademarks are utilized in interstate commerce.

29. The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

30. Baskin-Robbins and its franchisees currently operate approximately 2,500 stores in the United States and 3,000 stores outside of the United States. In the more than fifty-five years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

31. As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

The goodwill and reputation associated with the Baskin-Robbins marks are impaired when a franchisee fails to maintain standards and operates an unsanitary or unsafe business under the Baskin-Robbins trademarks.

### The Parties' Rights and Obligations Under the Franchise Agreements

32. All of the corporate Defendants were licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress in accordance with the terms of their Dunkin' Franchise Agreements. As noted above, certain Defendants were also licensed to use the Baskin-Robbins trademarks and trade name in accordance with the terms of their Baskin-Robbins Franchise Agreements, as applicable.

33. The terms of all the Franchise Agreements for both the Dunkin' and Baskin-Robbins brands and for all five (5) of the shops are identical or virtually identical. The language of the Franchise Agreements cited to or quoted herein is representative of the language contained in each Franchise Agreement.

34. Under the terms of the Franchise Agreement, Defendants agreed as follows:

(a) not to do or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Dunkin's or Baskin's proprietary marks and the Dunkin' system and Baskin system (§ 8.0.1);

(b) to keep full, complete, and accurate books and accounts in accordance with generally accepted accounting principles and in a form and manner as may be prescribed by Franchisor (§ 5.2);

(c) to make available for inspection at reasonable times all original books, records, and supporting documents that may be necessary to verify gross sales (§ 6.2);

  (d) to preserve for a period of three years all accounting records and supporting documents relating to the operation of the shop (§ 5.2.5); and

  (e) to pay the cost and expense, including reasonable accounting and legal fees, of any inspection, examination, or audit necessitated by a failure to prepare, deliver, or preserve statements or records required by the Franchise Agreements, or if such inspection discloses a discrepancy in the gross sales reported to Franchisor (§ 6.2).

35. Under the terms of the Franchise Agreements, Defendants also agreed to comply with all applicable civil and criminal laws, rules, regulations, ordinances, and orders of public authorities, including, but not limited to, those relating to employment and taxation. (§ 5.1.7.)

36. Defendants also agreed not to use the franchised premises for any illegal or unauthorized purpose. Franchise Agreement § 9.0.3.

37. Defendants agreed that it would be a default under the Franchise Agreements if they were convicted of or plead guilty or "nolo contendere" to a felony, crime involving moral turpitude, or any other crime or offense that Plaintiffs believed is injurious to Plaintiffs' systems, proprietary marks or the goodwill associated therewith, or if Plaintiffs had proof that Defendants had committed such a felony, crime or offense. Franchise Agreement § 9.0.2.

38. Defendants also agreed to cease their use of Plaintiffs' proprietary marks, or any methods associated with the names "Dunkin' Donuts" or "Baskin-Robbins" upon termination of the Franchise Agreements. Defendants agreed that any unauthorized or continued use of the marks after termination constitutes irreparable harm subject to injunctive relief. (§ 7.1.)

39. Defendants agreed that, upon termination, they would comply with all post-termination obligations, including immediately ceasing to use the Plaintiffs' trademarks and any methods associated with the Dunkin' Donut and Baskin-Robbins. (§ 9.4.3.)

40. Defendants agreed that they would pay to Dunkin' and Baskin-Robbins all damages, with interest, costs and expenses, including reasonable attorneys' fees, incurred by reason of any default or termination of the Franchise Agreements. (§ 9.3.)

### Cross-Defaults

41. The Franchise Agreements each contain a "cross-default" provision, which states, in Sections 9.0 and 9.0.4, that "Franchisee shall be in default under this Agreement . . . [i]f any other franchise agreement between FRANCHISEE and FRANCHISOR or any affiliated entity is terminated by reason of FRANCHISEE's default thereunder . . . ." (§§ 9.0, 9.0.4.)

42. Thus, the termination of one Franchise Agreement constitutes grounds for the termination of all of the other Franchise Agreements, and each of them individually.

### Cross-Guarantees

43. Pursuant to certain Cross-Guarantees contained in Section 5.6 of the Franchise Agreements, or in separately executed documents, each corporate franchisee, and each partner, member, or shareholder thereof, is jointly and severally liable as guarantors of the obligations of the others under their respective Franchise Agreements, where one or more of the partners, members, or shareholders holds an interest in another Dunkin' Donuts or Baskin-Robbins franchise. Consequently, all of the individual and corporate Defendants are each jointly and severally liable as the guarantors of obligations of the others with respect to the Franchise Agreements for all five (5) of the shops at issue in this case.

### Defendants' Defaults and Termination

44. Defendants have knowingly, purposefully, and repeatedly breached the terms of their Franchise Agreements by, without limitation, violating applicable labor laws and tax laws.

45. Defendants have repeatedly failed to pay payroll taxes for monies paid to and on

behalf of numerous employees.

46. Defendants have admitted to Plaintiffs that they do not pay overtime wages to certain employees who work in excess of 40 hours per week.

47. From November 2006 to March 2007, Defendants were the subject of an investigation by the United States Department of Labor ("DOL") for improper payroll practices.

48. The result of the DOL investigation was that the Defendants were required to make payments totaling $5,000 to twenty of their employees who had not been paid overtime wages.

49. Defendants have also participated in a fraudulent scheme to avoid complying with applicable laws, including but not limited to, provisions that required the Defendants to pay federal and state payroll taxes due and owing to the IRS and the State of New York, in violation of employee income tax withholding laws and regulations.

50. Defendants also repeatedly failed to maintain full, complete, and accurate financial records for the franchised businesses, including but not limited to, the following:

(a) failing to maintain records with respect to cash accounts which were used to pay employees and to pay for personal expenses for the officers and shareholders of the Defendants.

(b) falsifying records with respect to the cost of goods sold and cost of labor at their shops.

(c) failing to verify I-9s Employment Eligibility Verification Forms for all their employees.

(d) failing to maintain valid I-9s Employment Eligibility Verification Forms for all their employees.

51. Defendants also failed to use the Basic Pilot Program to screen employment applicants even though they were required to do so by Dunkin' Donuts for all employees hired after June 1, 2006.

52. Failing to verify the status of an employee violates the immigration and employment verification requirements of 8 U.S.C. § 1324a(b).

53. Defendants' repeated conduct has been, and continues to be, injurious and prejudicial to the goodwill associated with Plaintiffs' proprietary marks and franchise systems in breach of the Franchise Agreements.

54. Based on the foregoing, Defendants have repeatedly failed to substantially comply with their obligations under the Franchise Agreements. Their conduct constitutes good cause for the termination of the Franchise Agreements.

55. Based on the foregoing, and pursuant to the applicable provisions of the Franchise Agreement, on August 3 2007, Plaintiffs sent to Defendants a Notice of Default and Termination terminating the Franchise Agreement, effective immediately upon Defendants' receipt of the Notice, stating the grounds for termination, and requesting that Defendants immediately comply with their post-termination obligations as set forth in the Franchise Agreement.

56. As of this date, Defendants have not complied with the terms of the Notice of Termination.

57. Defendants' actions have caused and continue to cause irreparable harm to Plaintiffs, including harm to the reputation and goodwill of both brands. Granting the requested injunctive relief would not harm any third parties and would advance the public interest.

**The Shop Development Agreement ("SDA")**

58.     To the extent that Defendants have any current agreements to develop additional shops pursuant to a Multiple Unit Store Development Agreement ("SDA"), Plaintiffs have cause to terminate those agreements based on Defendants' breaches of their Franchise Agreements. Under Section 1 of a Multiple Unit Store Development Agreement, Defendants agreed that their right to develop was contingent on not being in default under the Development Agreement, the Franchise or Ancillary Agreements for any unit, or any other agreement. By engaging in the breaches noted herein, Defendants breached this provision and, therefore, Plaintiffs have good cause to terminate all Development Agreements.

**The Shop Lease**

59.     On July 27, 2005, Defendant New AMD Enterprises, Inc., entered into a lease with DB II for the 266 First Avenue Shop. That Lease provides that DB II has the right to terminate the Lease if the Franchise Agreement for the 266 First Avenue Shop is terminated for any reason. Lease § 14(a). Section 18(e) of the Lease also gives DB II the right, upon termination, to enter upon the premises and repossess the same and expel Defendant. "In the case of any such termination, the TENANT will indemnify the LANDLORD against all loss or damage suffered by reason of the termination . . . ." Lease § 18(e).

**COUNT I**
**Breach of Contract (Franchise Agreements, Lease and SDA)**

60.     The allegations of Paragraphs 1 through 59 are hereby incorporated by reference.

61.     The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Franchise Agreements cited herein.

62. Defendants' breaches of their Franchise Agreements constitute good cause for terminating the Franchise Agreements, Lease and SDA.

63. As a direct and proximate result of these breaches, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred substantial losses, fees, and expenses in excess of $75,000.

## COUNT II
## Trademark Infringement

64. The allegations of paragraphs 1 through 63 are hereby incorporated by reference.

65. Defendants' use of Plaintiffs' trademarks and trade names outside the scope of the Franchise Agreements and without Plaintiffs' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Plaintiffs. Such continued use of Plaintiffs' trademarks and trade name infringes their exclusive rights in the trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114.

66. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

67. As a direct and proximate result of these actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT III
## Unfair Competition

68. The allegations of paragraphs 1 through 67 are hereby incorporated by reference.

69. Defendants' use of Plaintiffs' trademarks, trade name, and trade dress outside the scope of their Franchise Agreements is likely to cause confusion, or to cause mistake, or to

deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities.  Such continued unauthorized use of Plaintiffs' trademarks and trade names violate § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

70. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

71. As a direct and proximate result of these actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT IV
### Trade Dress Infringement

72. The allegations of paragraphs 1 through 71 are hereby incorporated by reference.

73. Defendants' shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" appear in the same "frankfurter" lettering style and in the same distinctive pink and orange color scheme as Dunkin' uses for the doughnut shops operated by Dunkin's licensees.

74. Defendants' use of the trade dress that is identical or confusingly similar to Dunkin's trade dress constitutes a false designation of the origin of the Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of the Defendants' shops with the Dunkin' shops operated by Dunkin' licensees.  Such adoption of Dunkin's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

75. Defendants' acts were done knowingly and intentionally to cause confusion, or to

cause mistake, or to deceive.

76. As a direct and proximate result of these actions, Plaintiffs have suffered and are continuing to suffer irreparable injury and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A. Enter a declaratory judgment order stating that Defendants' conduct violated the terms of the Franchise Agreement and constitutes good cause for terminating the Franchise Agreements, Lease and SDA;

B. Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements, Lease and SDA as of the effective date of the Notice of Default and Termination;

C. Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of the breaches of the Franchise Agreements by Defendants;

D. Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements as of the effective date of the Notice of Default and Termination, or as otherwise provided by applicable law;

E. Enjoin Defendants and all those acting in concert with them from infringing upon Dunkin's trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin';

  F. Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Plaintiffs, including but not limited to the Franchise Agreements, SDA, Lease Riders, and Lease Option Agreements;

  G. Award Plaintiffs judgment against Defendants for the damages they have sustained and the profits Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

  H. Award Plaintiffs prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

  I. Award Plaintiffs such exemplary or punitive damages as are deemed appropriate because of the willful, intentional, and malicious nature of the conduct of Defendants;

  J. Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

  K. Award Plaintiffs such other relief as this Court may deem just and proper.

           Respectfully submitted,

           /s/ Ronald D. Degen
           Ronald Degen, Esq.  (RD 7808)
           Scott Goldfinger, Esq.  (SG 9219)
           O'ROURKE & DEGEN, PLLC
           225 Broadway, Suite 715
           New York, New York 10007
           Telephone: (212) 227-4530
           Facsimile: (212) 385-9813

|  |  |
|---|---|
|  | Robert L. Zisk, Esq. (RZ 1275)<br>Jeffrey L. Karlin, Esq. (JK 7381)<br>GRAY, PLANT, MOOTY, MOOTY<br>& BENNETT, P.A.<br>2600 Virginia Avenue, N.W.,<br>Suite 1111<br>Washington, DC 20037<br>Telephone:   (202) 295-2200<br>Facsimile:   (202) 295-2250<br><br>*Attorneys for Plaintiffs*<br>Dunkin' Donuts Franchised Restaurants LLC,<br>Dunkin' Donuts Franchising LLC<br>DD IP Holder LLC,<br>Baskin-Robbins Franchising LLC,<br>BR IP Holder LLC, and<br>DB Real Estate II LLC |
| Dated: August 13, 2007 |  |